UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-61909-CIV-O'SULLIVAN

[CONSENT]

MBH MARITIME INTEREST LLC,

    Plaintiff,

v.

JOSEPH MANTEIGA and
TREICHEL MARINE REPAIR, INC.,

    Defendants.
_____/

## ORDER

THIS MATTER is before the Court on Defendant's, Joseph Manteiga, Motion to Dismiss Plaintiff's, MBH Maritime Interest LLC, Second Amended Complaint for Failure to State a Claim with Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) and Supporting Memorandum of Law (DE# 22, 11/21/17) and Treichel Marine Repair Inc.'s Motion to Dismiss MBH Maritime Interest LLC's Second Amended Complaint (DE# 23, 11/27/17).

## BACKGROUND

This action stems from an allision[1] which occurred on December 1, 2016 when the M/Y Bottom Line (a vessel owned by Joseph Manteiga) struck the M/Y Traveller (a

---

[1] "An allision occurs when a moving vessel strikes a stationary object, and a collision occurs when two moving vessels strike each other." Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport, 596 F.3d 357, 362 (6th Cir. 2010) (citing Fischer v. S/Y NERAIDA, 508 F.3d 586, 589 n.1 (11th Cir. 2007)).

vessel owned by MBH Maritime Interest LLC (hereinafter "plaintiff" or "MBH")). The plaintiff's insurer, Federal Insurance Company, brought an action to recover the costs of repairing the M/Y Traveller. See Federal Insurance Company v. Manteiga et al, Case No. 17-cv-60766-O'SULLIVAN.[2] Additionally, the plaintiff brought the instant action, MBH Maritime Interest LLC v. Manteiga et al, Case No. 17-cv-61909-O'SULLIVAN, seeking to recover damages not covered by the vessel's insurance. On October 12, 2017, the Court issued a Consolidation Order (DE# 15) consolidating both cases.

On November 14, 2017, the plaintiff filed an amended complaint in the instant case against defendants Joseph Manteiga (hereinafter "Manteiga") and Treichel Marine Services, Inc. (hereinafter "Treichel"). See Plaintiff MBH Maritime Interest LLC's Second Amended Complaint (DE# 18, 11/14/17) (hereinafter "SAC"). The SAC alleged the following causes of action: negligence against Manteiga (Count I), negligen[t] entrustment against Manteiga (Count II) and negligence against Treichel (Count III). Id. In all three counts, the plaintiff alleged that it incurred damages "in the form of [the M/Y Traveller's] diminution in market value, post-repair, as a result of owner's duty to disclose material vessel damage, as a matter of custom and practice in the yachting industry." Id. at ¶¶ 11, 14, 17.

On November 21, 2017, the defendants filed the instant motions to dismiss. See Defendant's, Joseph Manteiga, Motion to Dismiss Plaintiff's, MBH Maritime Interest LLC, Second Amended Complaint for Failure to State a Claim with Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) and Supporting Memorandum of Law (DE#

---

[2] The parties settled the action brought by the plaintiff's insurer at the February 2, 2018 mediation. See Mediation Report (DE# 116 in Case No. 17-60766-CIV, 2/2/18). Accordingly, only the instant action remains.

2

22, 11/21/17) (hereinafter "Manteiga's Motion"); Treichel Marine Repair Inc.'s Motion to Dismiss MBH Maritime Interest LLC's Second Amended Complaint (DE# 23, 11/27/17) (hereinafter "Treichel's Motion"). The plaintiff filed its responses to the instant motions on December 5, 2017 and December 11, 2017. See Plaintiff MBH Maritime Interest LLC's Response to Defendant Joseph Manteiga's ("Manteiga") Motion to Dismiss Second Amended Complaint (DE 22) (DE# 30, 12/5/17) (hereinafter "Response to Manteiga's Motion"); Plaintiff MBH Maritime Interest LLC's Response to Defendant Treichel Marine Repair, Inc.'s ("Treichel") Motion to Dismiss Second Amended Complaint (DE 23) (DE# 33, 12/11/17) (hereinafter "Response to Treichel's Motion"). The defendants filed their replies on December 12, 2017 and December 18, 2017. See Defendant's, Joseph Manteiga, Reply to Plaintiff MBH Maritime Interest LLC's Response to Defendant Manteiga's ("Manteiga") Motion to Dismiss Second Amended Complaint (DE# 36, 12/12/17) (hereinafter "Manteiga's Reply"); Treichel Marine Repair Inc.'s Reply in Support of Motion to Dismiss (DE# 42, 12/18/17) (hereinafter "Treichel's Reply").

In the interim, the plaintiff filed a motion asking the Court to take judicial notice of a form listing agreement from the International Yacht Brokers Association, Inc. See Plaintiff MBH Maritime Interest LLC's Motion for Judicial Notice Pursuant to Fed. R. Evid. 201(c)(2) and (d) (DE# 32, 12/11/17). On December 19, 2017, the Court denied the plaintiff's request for judicial notice stating that:

> First of all, a motion to dismiss tests the sufficiency of the allegations in the complaint. The Court finds no support in the law for Plaintiff's proposition that it should examine the allegations in light of extraneous documents which establish "context" for the allegations. On the contrary, as Plaintiff's cases hold, the Court may only consider documents that are central to or

3

> referenced in the complaint. See La Grasta v. First Union Securities, 358 F.3d 840, 845 (11th Cir. 2004). This document is not referenced in the complaint. Neither is it clear from the face of the complaint that it is central to it. Industry custom and practice may be a central issue in this case, but that is a question of fact to be resolved at summary judgment or trial. Finally, Defendants are correct that Plaintiffs have not established the authenticity of this form agreement.

Order (DE# 43 at 2-3, 12/19/17). Accordingly, the undersigned will not consider the listing agreement when ruling on the instant motions.

Additionally, on February 14, 2018, the undersigned issued an Order requiring the movants to file a notice indicating whether the instant motions to dismiss should be consolidated. See Order (DE# 61 at 1-2, 2/14/18). On February 21, 2018, Treichel filed a notice "request[ing] that the Motions to Dismiss filed by Treichel and Manteiga be consolidated for the Court's consideration." Notice of Compliance (DE# 62 at 2, 2/21/18).

This matter is ripe for adjudication.

## FACTS

The plaintiff is the owner of the M/Y Traveller, a sport fishing vessel. SAC at ¶ 2. Defendant Manteiga is the owner of the M/Y Bottom Line, a sport fishing vessel. Id. at ¶ 3. Defendant Treichel is a marine repair facility. Id. at ¶ 4.

On or about December 1, 2016, the M/Y Traveller and the M/Y Bottom Line were located at a marina in Dania, Florida. SAC at ¶ 7. At the time, the M/Y Bottom Line was in the custody of Treichel for repairs. Id. "When the employees of TREICHEL attempted to move the M/Y BOTTOM LINE, the controls to one of the engines did not operate properly and the M/Y BOTTOM LINE drove across the Marina and allided with the M/Y TRAVELLER, causing substantial damages." Id.

4

## STANDARD OF REVIEW

In considering a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Court must accept the non-moving party's well-pled facts as true and construe the complaint in the light most favorable to that party. Caravello v. Am. Airlines, Inc., 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (citing United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc); St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am., 795 F.2d 948, 953 (11th Cir. 1986)).

To survive a motion to dismiss, the complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The issue to be decided is not whether the plaintiff will ultimately prevail, but "whether the [plaintiff] is entitled to offer evidence to support the claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984)).

## ANALYSIS

The defendants[3] move to dismiss the SAC with prejudice on the ground that the damage sought by the plaintiff – the M/Y Traveller's post-repair loss of value – is not recoverable under general maritime law. Manteiga's Motion at 3. The defendants maintain that "[g]eneral maritime law has long held the principle that damages to a

---

[3] Because Treichel has adopted Manteiga's arguments, see Notice of Compliance (DE# 62, 2/21/18), the Court will attribute the arguments made by Manteiga to both defendants.

vessel involved in a collision that are not a total loss can be measured by the costs of repairs." Id. at 5.

The plaintiff argues that it can recover for the M/Y Traveller's post-repair loss of value under general admiralty law because "[p]ost-repair loss of value is included in general admiralty law's doctrine of restitutio in integrum." Response to Manteiga's Motion at 2. Additionally, the plaintiff states that even if there is no recovery for post-repair loss of value under admiralty law, the Court should apply Florida common law because:

> a. [Florida] law does not prejudice characteristic features originating in admiralty and
>
> b. [Florida] law does not interfere with the harmony and uniformity of maritime law.

Id. (referencing factors articulated in S. Pac. Co. v. Jensen, 244 U.S. 205, 216 (1917)).

## A. Damages under General Maritime Law

The parties do not dispute that restitutio in integrum is the legal maxim for determining damages in maritime cases involving an allision or collision. See Manteiga's Motion at 5 ("courts in admiralty customarily apply the doctrine of restitutio in integrum in collision/allision cases"); Response to Manteiga's Motion at 4 ("[r]estitutio in integrum, the oft-cited admiralty maxim, originated in Roman contract law (the remedy of restitution)."). The parties dispute, however, whether post-repair loss of value is recoverable under this doctrine.

The plaintiff cites to The Zeller[3] in support of its argument that the maxim of restitutio in integrum "allow[s] post-repair, loss of market value to be claimed."

---

[3] The Zeller No. 12, 68 F. Supp. 795, 797 (S.D.N.Y. 1946), decree aff'd sub nom. Zeller Marine Corp. v. Nessa Corp., 166 F.2d 32 (2d Cir. 1948)

6

Response to Manteiga's Motion at 5. The defendants argue that "The Zeller should be disregarded by this Court in light of having different facts . . . ." Manteiga's Reply at 9.

The Zeller involved a suit in admiralty brought by the owner of a scow to recover damages sustained by the scow when the respondent, in the process of unloading steel girders, allowed "some of the girders . . . to fall, penetrating the deck of the scow . . . ." The Zeller, 68 F. Supp. at 797. A hearing was held before a special commissioner during which the owner of the scow, "took the position . . . that under the rule of restitutio in integrum . . . [it] was entitled to have the scow put back to its original condition, irrespective of the cost of removing and renewing the damaged keilson."[4] The respondent argued that the owner of the scow "was only entitled to the reasonable cost of such repair, **together with the depreciation, if any, of the scow** which had been damaged and repaired." Id. (emphasis added). The commissioner sided with the scow's owner issuing a report which permitted the scow's owner to recover for the cost of renewing the keelson. Id. at 798. The district court rejected the commissioner's report. Instead, the court agreed with the respondent that a renewal of the keelson was not necessary, finding that the owner of the scow was entitled to recover both "the reasonable cost of repair which would restore the scow to as good a condition as it was before the damage" and "due allowance for any difference between the original value of the scow and its value after repairs." Id. at 800.

---

[4] The keilson or keelson is "a longitudinal structure running above and fastened to the keel of a ship in order to stiffen and strengthen its framework." Merriam-Webster Online Dictionary (Merriam-Webster 2018).

7

The defendants argue that the Court should disregard The Zeller and follow the decision in Hatt 65, L.L.C. v. Kreitzberg, No. 3:06CV332/MCR, 2009 WL 700771, at *1 (N.D. Fla. Mar. 16, 2009). Hatt 65 is more factually analogous to the instant case. In Hatt 65, the defendants' sailboat broke loose from its moorings during a hurricane and allided with the plaintiffs' vessel. Id. at *1. The plaintiffs sought to "recover damages for diminution in the vessel's market value due to the stigma of its having been in a collision." Id. at *2. The question before the court was "the novel legal issue of whether plaintiffs could recover for loss of market value of a luxury private yacht." Id. at 1. The court found that loss of market value was not recoverable under maritime law:

> this court concludes it should apply the doctrine of restitutio in integrum as it has been applied by courts sitting in admiralty for decades. So doing, the court concludes that plaintiffs cannot bring a claim for loss of market value damages. In the court's view, to extend the doctrine of restitutio in integrum in order to allow plaintiffs in this case to recover alleged loss of market value damages to their luxury personal yacht, particularly since the court is aware of no case in which such damages have been permitted for any type of vessel, would disturb the uniformity of maritime law.

Id. at *2.

The plaintiff in the instant case argues that Hatt 65 "should be scrutinized" because "the parties [in Hatt 65] did not advise the court of the standard set forth in The Zeller, which included post-repair loss of value as an element of restitutio in integrum." Response to Manteiga's Motion at 6. It is unclear how helpful the opinion in The Zeller is to the issue at hand because the *respondent* (as opposed to the scow's owner) actually advocated for the recovery of depreciation costs plus the cost of repair which was significantly lower than the amount the scow owner sought to recover for the renewal of the keelson. 68 F. Supp. at 797.

In Hatt 65, the court distinguished a case cited by the plaintiffs, Dominican Maritime, S.A. v. M/V Inagua Beach, 572 F.2d 892, 893 (1st Cir. 1978), as follows:

> The court reads the cited passage . . . as merely restating the general rule: "An owner whose boat is damaged by the negligence of another is entitled to have his boat *repaired* in a way which will not leave her essentially depreciated in her market value, or inferior for practical use." Dominican Maritime, 572 F.2d at 893 (emphasis added). **The Dominican Maritime court was referring to the owner's right to have repairs performed in such a way as to not render a reduction in market value to the vessel; the cited language does not suggest the court was proposing the owner was entitled to possible stigma damages connected with the vessel's involvement in a maritime collision.**

Hatt 65, 2009 WL 700771, at *3 (italics in original; bold emphasis added).

The undersigned finds the reasoning in Hatt 65 to be persuasive and similarly concludes that post-repair loss of value is not recoverable under general maritime law under the maxim of restitutio in integrum.

### B. Applicability of Florida Common Law Remedies

Alternatively, the plaintiff argues that even if post-repair loss of value is not available under admiralty law, the plaintiff can still recover these damages under Florida common law. Response to Manteiga's Motion at 2.

The parties agree that Florida common law allows for the recovery of post-repair loss of value. See Response to Manteiga's Motion at 2 ("Florida common law allows claims for post-repair loss of value."); Manteiga's Reply at 2 ("Florida common law allows for post-repair loss of value in addition to the repairs"). However, the parties dispute whether Florida law applies to the instant case.

#### 1. Jensen Factors

The plaintiff argues that Florida common law can be applied to the instant case using the factors articulated by the Supreme Court in S. Pac. Co. v. Jensen, 244 U.S.

205 (1917). See Response to Manteiga's Motion at 8. The defendants argue that Jensen is inapplicable to the instant case because it "only pertains to state legislation attempting to preempt maritime law," whereas here the plaintiff is seeking to apply Florida common law. Manteiga's Reply at 4 n.2.[5] The viability of Jensen has been called into doubt. See In re Antill Pipeline Const. Co., Inc., 866 F. Supp. 2d 563, 568 (E.D. La. 2011) (noting that "while the analysis forwarded in Jensen is instructive in its expression of the key concerns when deciding a case involving maritime law preemption of state law, and has not been expressly overruled, it has been greatly undermined as precedent, and is thus not binding."). Nonetheless, the defendants maintain that even if the Court were to apply the Jensen factors, "Florida common law directly interferes with the harmony and uniformity of maritime law." Manteiga's Reply at 4.

Assuming, arguendo, that the Jensen factors apply to the instant case, the undersigned agrees with the defendants that the Jensen factors do not support the application of Florida common law to supplement the remedies available to the plaintiff under general maritime law

"According to Jensen, a court may supplement general maritime law with state law if (1) it does not conflict with an applicable act of Congress; (2) it does not work material prejudice to a characteristic feature of general maritime law; or (3) it does not interfere with the proper harmony and uniformity of the general maritime law in its

---

[5] In Jensen, the Supreme Court addressed the issue of whether a state worker's compensation statute could provide relief to a worker who was killed while unloading cargo from a vessel. 244 U.S. at 208.

international and interstate relations." In re Antill Pipeline Const. Co., Inc., 866 F. Supp. 2d at 567-68 (citing Jensen).

The first factor is not at issue here. There is no act of Congress implicated in the instant case. The Court will address the second and third factors below.

### a. Whether Florida Law Works a Material Prejudice to a Characteristic Feature of General Maritime Law

With respect to the second factor, the plaintiff states that "where a doctrine neither originated in admiralty nor has its exclusive application there, it cannot work 'material prejudice to [a] characteristic feature of the general maritime law.'" Response to Manteiga's Motion at 9 (quoting American Dredging Co. v. Miller, 510 U.S. 443, 450 (1994)). The plaintiff further states that:

> in this case, the restitutio in integrum doctrine originated in Roman contract law, not admiralty. The rule has been refined to that set forth in RESTATEMENT OF TORTS § 928, which includes post-repair loss of value. Section 928 is a damages standard extensively used in state common law and in Florida, to the extent it has been adopted as a jury instruction. Since the doctrine restitutio in integrum did not originate, nor is it exclusively used, in admiralty, it is not a "characteristic feature originating in admiralty law" and cannot be prejudiced by the application of its state law equivalent.

Id. at 9-10.

The defendants argue that "the remedy [of] restitutio in integrum is unique to maritime law" and "this doctrine has been applied in maritime law for hundreds of years, so as to become part of its very fabric." Manteiga's Reply at 5.

The undersigned finds that this factor does not support the application of Florida common law to the instant case. The phrase restitutio in integrum originated in Roman

11

civil law, however, the concept has a distinct meaning in admiralty law:

> The phrase was derived from the Roman civil law to denote 'a restoring [of] parties to the condition they were in before entering into a contract or agreement, on account of fraud, infancy, force, honest mistake, etc.' 2 Bouv.Law Dict.,Third Revision, p. 1914. **There is, therefore, no connection between the use of this phrase in Roman law and in modern maritime law. It appears to have been transferred merely because it was thought to convey in a convenient and terse form the idea of [in] admiralty that the innocent part should be reimbursed for his actual pecuniary loss.** Roscoe, The Measure of Damages in Actions of Maritime Collisions, 3d Ed., 1929, pages 5-7, 74.

The Zeller, 68 F. Supp. at 799 (emphasis added).

The former Fifth Circuit explained the meaning of restitutio in integrum, in admiralty, as follows:

> That doctrine, strictly construed, would limit damages to the difference in the value of the vessel before and after collision. However, **that measure has long been equated with the cost of necessary repairs and the loss of earnings while they are being made.**

Delta Marine Drilling Co. v. M/V Baroid Ranger, 454 F.2d 128, 129 (5th Cir. 1972) (emphasis added). As this Court has similarly noted:

> According to this maxim, the owner of a vessel involved in a collision is entitled to damages equaling the cost of repairs. The Baltimore, 75 U.S. 377, 385 (1869). "**In admiralty, the cost of repairs is the equivalent of value-dimunition. 'Damage less than total loss is compensated by reference to cost of repairs.'**" Hewlett v. Barge Bertie, 418 F.2d 654, 658 (4th Cir. 1969). "Strictly the measure of damages in a collision is the difference in value between the ship before and after the collision, **but the cost of the necessary repairs and the loss of earnings while they are being made have long been regarded as its equivalent.**" Id. (citations omitted). "If a vessel is damaged as the result of a collision [that] is not a total loss, the owner is entitled to the cost of repairs, salvage expenses, out of pocket expenses and detention damages." 15 C.J.S. Collision § 254 (2006).

Bow to Stern Maintenance, Inc. v. Gilbert Jackson, No. 05-21692-CIV, 2006 WL 8432016, at *3 (S.D. Fla. Dec. 29, 2006) (emphasis added).

12

These cases illustrate that the doctrine of restitutio in integrum as applied in admiralty law is different from the manner in which that doctrine has been adopted by the Restatement of Torts § 928 and incorporated into Florida law which does allow a plaintiff to recover post-repair loss of value damages.

Although the plaintiff argues that many courts in admiralty have "equated restitutio in integrum with the Restatement of Torts § 928," Response to Manteiga's Motion at 8, it is telling that, other than The Zeller, the plaintiff points to no other admiralty case where the court entertained an award of post-repair loss of value despite a long history of maritime jurisprudence and the relatively common occurrence of allisions and collisions.

The undersigned concludes that the maxim of restitutio in integrum as developed in maritime law is distinct and allowing the plaintiff to apply Florida law to recover post-repair loss of value would work a material prejudice to a characteristic feature of general maritime law.

### b. Whether Applying Florida Law Would Interfere with the Proper Harmony and Uniformity of The General Maritime Law in its International and Interstate Relations

With respect to the third factor, the plaintiff argues that the application of Florida common law would not interfere with the harmony and uniformity of maritime law. Response to Manteiga's Motion at 10. The plaintiff notes that three factors apply to the third prong of Jensen: (1) whether the state law provides a right or a remedy; (2) whether the interest is predominantly local and (3) whether the admiralty interest is commercial or recreational. Id. at 10-12. Applying these three factors, the plaintiff argues that permitting a state remedy would not disrupt the uniformity and harmony of

13

admiralty law because "state remedies are less likely to disturb admiralty law uniformity than are state laws that purport to change rights under admiralty law;" the allision occurred in state territorial waters and the damage occurred to a recreational vessel as opposed to a commercial vessel. Id.

The defendants respond that "the application of Florida common law would definitely interfere with the harmony and uniformity of maritime law." Manteiga's Reply at 5. The defendants argue that allowing the plaintiff to recover post-repair loss of value damages under the Florida common law "would provide incongruent remedies for the same torts depending on the situs of the tort, which is contrary to uniformity." Id. The defendants note that:

> Plaintiff MBH would have this court muddy the waters by destroying one consistent rule for maritime collisions. Instead, it would have this Court set one rule for high seas maritime collisions, one rule for local collisions involving commercial vessels, and then a separate rule for local collisions involving recreational vessels...and who knows if a recreational vessel allides or collides with a commercial vessel!

Id. at 5-6.

The Court agrees with the defendant that allowing the plaintiff to recover for post-repair loss of value damages under Florida common law would disrupt the harmony and uniformity of maritime law. The court in Hatt 65 addressed the uniformity concerns of maritime law:

> In the court's view, to extend the doctrine of restitutio in integrum in order to allow plaintiffs in this case to recover alleged loss of market value damages to their luxury personal yacht, particularly since the court is aware of no case in which such damages have been permitted for any type of vessel, would disturb the uniformity of maritime law. Diesel "Repower," Inc. v. Islander Investments, 271 F.3d at 1323-24. Moreover, under the facts and arguments of this case there is no basis for deciding this damages issue under principles of state law.

14

Hatt 65, 2009 WL 700771, at *2. The objective of uniformity and harmony would be impaired if vessel owners were permitted to expand the types of damages recoverable depending on the location of the vessel at the time of an allision or collision. It is difficult to see how uniformity and harmony would not be impaired if the damages available to a vessel owner varied depending on location. Moreover, "[t]o allow state law to supply a remedy when one is denied in admiralty would serve only to circumvent the maritime law's jurisdiction." IMTT-Gretna v. Robert E. Lee SS, 993 F.2d 1193 (5th Cir.), supplemented, 999 F.2d 105 (5th Cir. 1993).

Accordingly, Florida common law should not supplement the damages available to the plaintiff under general maritime law. Post-repair loss of value were the only damages pled in the SAC. Accordingly, the SAC fails to meet the Rule 12(b)(6) standard and should be dismissed with prejudice. Because the Court finds that the SAC should be dismissed with prejudice, it is not necessary to address the additional argument raised by Treichel that the plaintiff's post-repair loss of value damages were not pled with sufficient specificity. See Treichel's Motion at 7 (arguing that the plaintiff "has failed to provide any factual allegations that describe how the Traveller lost market value after repairs.").

## CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that Defendant's, Joseph Manteiga, Motion to Dismiss Plaintiff's, MBH Maritime Interest LLC, Second Amended Complaint for Failure to State a Claim with Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) and Supporting Memorandum of Law (DE# 22, 11/21/17) and Treichel Marine Repair

Inc.'s Motion to Dismiss MBH Maritime Interest LLC's Second Amended Complaint (DE# 23, 11/27/17) are **GRANTED**. The Second Amended Complaint (DE# 18, 11/14/17) is **DISMISSED with prejudice**.

DONE AND ORDERED in Chambers at Miami, Florida this 15 day of March, 2018.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
All counsel of record